**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **HENRY MAURICIO AREVALO MENDOZA,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-2123-R** |
| | ) | |
| **MARKWAYNE MULLIN, DHS Secretary,** | ) | |
| | ) | |
| **Respondent.** | ) | |

# REPORT AND RECOMMENDATION

Petitioner Henry Mauricio Arevalo Mendoza, a noncitizen[1] and Salvadoran national proceeding pro se, filed a Petition for Writ of Habeas Corpus ("Petition"), Doc. 1, challenging under 28 U.S.C. § 2241 his detention by U.S. Immigration and Customs Enforcement ("ICE"). United States District Judge David L. Russell referred this matter to the undersigned Magistrate Judge in accordance with 28 U.S.C. § 636(b)(1)(B)-(C). Doc. 3. The undersigned set an expedited briefing schedule, Doc. 5, and the Petition is at issue. Petitioner also filed an Emergency Request for Release from Immigration Detention. Doc. 8.

For the reasons below, the undersigned recommends that the Court deny the Petition and deny Petitioner's pending motion as moot.

---

[1] Unless quoting, this Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

## I. Background

Petitioner, a citizen of El Salvador, entered the United States as an unaccompanied juvenile on or about February 18, 2019, near Hidalgo, Texas, without inspection or parole. Doc. 7-1 at 1 (Notice to Appear); Resp. at 1. At a later, unspecified time, ICE released Petitioner on an Order of Release on Recognizance.[2] Resp. at 1.

On April 4, 2026, ICE issued a warrant for Petitioner's arrest. Doc. 7-2 at 1 (Arrest Warrant). ICE arrested him the same day. *Id.* Two days later, ICE placed Petitioner into removal proceedings before the Immigration Court under 8 U.S.C. § 1229a through the issuance of a Notice to Appear. Doc. 7-1 at 1, 3. Petitioner was charged with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as someone who entered the United States without inspection. Doc. 7-1 at 1, 4. He was also charged with being an immigrant who, when he entered the United States, was "not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document," a valid unexpired passport, or other suitable travel and identification documents, under 8 U.S.C. § 1182(a)(7)(A)(i)(I). Doc. 7-1 at 4.

On May 12, 2026, an Immigration Judge ("IJ") granted Petitioner's application for voluntary departure from the United States. Doc. 7-3 at 1 (IJ Order); Pet. at 2 (confirming Petitioner "asked for a voluntary departure" (citation modified)). *See* EOIR, Automated

---

[2] Respondents do not attach evidence showing Petitioner's status (as an unaccompanied juvenile) when he entered the United States or the circumstances of his later release. *See* Resp. at 1. Petitioner did not contest either assertion by filing a reply, so the undersigned accepts Respondents' factual assertions as accurate.

Case Information, *at* https://acis.eoir.justice.gov/en/ (last accessed Oct. 8, 2026). The IJ's order required removal to occur "on or before 06/11/2026," subject to any deadline extensions. Doc. 7-3 at 1. Nothing in the record suggests this deadline was extended. When Petitioner did not depart by June 11, 2026, the "grant of [his] pre-conclusion voluntary departure [was] withdrawn without further notice or proceedings," and the IJ's order granting voluntary departure matured into an order of removal that was "immediately effective." *Id.* Petitioner waived his right to appeal the IJ's order and "all issues" included in it. *Id.* at 1, 3.

Petitioner also applied for asylum to U.S. Citizenship and Immigration Services ("USCIS"). Doc. 7-5 at 1 (Syed Decl.); Resp. at 2 (clarifying the "relief application" referenced in Mr. Syed's Declaration is an "application for asylum"). Petitioner now seeks to withdraw his asylum application. Respondents state, "ICE ERO has been working with Petitioner Arevalo-Mendoza and USCIS to have [his relief application] withdrawn and his voluntary departure effectuated." Doc. 7-5 at 1. The process for Petitioner to withdraw his asylum application and to clear the way for his removal is not complete. *Id.*; Resp. at 3 ("Respondent[s are] diligently working with Petitioner to withdraw his application and effectuate his voluntary departure.").

When Petitioner filed his Petition, he was detained at Diamondback Correctional Facility in Watonga, Oklahoma. Pet. at 1. He remains detained there. *See* ICE Online Detainee Locator System, *at* https://locator.ice.gov/odls/#/results (last visited Oct. 8, 2026).

## II. **Petitioner's Claims**

Petitioner asserts one count in his Petition—that he was granted voluntary departure but has not been removed, despite "fully cooperating with ICE to secure his removal." Pet. at 6 (citation modified). He asks to "be removed at the earliest possible" time or for the Court to order him "released on an order of supervision." *Id.* at 7 (citation modified). Because Petitioner's order of removal is final, the undersigned liberally construes his claim as made under *Zadvydas v. Davis*, 533 U.S. 678 (2001) and asserting a violation of his right to due process.

## III. **Standard of Review**

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas*, 533 U.S. at 687-88).

Petitioner has a final order of removal, meaning his detention is governed by 8 U.S.C. § 1231(a). Under that statute, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." *Id.* § 1231(a)(1)(A). This 90-day period is known as the "removal period." *Id.* The removal period begins on the latest of: (1) the date the order of removal becomes administratively final, (2) the date of the court's final order when a removal order is judicially reviewed, or (3) the date the noncitizen is released from detention or confinement if detained, unless the

noncitizen is confined under immigration processes. *Id.* § 1231(a)(1)(B). During the removal period, noncitizens are subject to mandatory detention. *Id.* § 1231(a)(2)(A).

Removal of a noncitizen is not always completed during the removal period. And the end of the removal period does not automatically trigger release. *See* 8 U.S.C. § 1231(a)(6) (allowing post-removal-period detention of, among others, noncitizens who are "inadmissible under section 1182" or "removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4)"); *Morales-Fernandez v. INS*, 418 F.3d 1116, 1123 (10th Cir. 2005). The detention of a noncitizen subject to a final order of removal may not be indefinite and is presumptively reasonable for only six months beyond the removal period. *See Zadvydas*, 533 U.S. at 701. "This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Ordinarily, "if the alien does not leave or is not removed within the removal period," he may be released "subject to supervision." 8 U.S.C. § 1231(a)(3) (citation modified).

As to the six-month period, courts have recognized *Zadvydas* only "adopt[ed] a presumption—not a conclusive bar to adjudication of whether continued detention is authorized that lifts only after six months have elapsed." *Cruz Medina v. Noem*, 794 F. Supp. 3d 365, 375 (D. Md. 2025); *accord Roble v. Pontesso,* 90 F. App'x 334, 336 (10th Cir. 2004) (acknowledging a "rebuttable presumption" in *Zadvydas*). Indeed, after *Zadvydas*, the Supreme Court rejected an argument by the Government that *Zadvydas* "authorizes detention until it approaches constitutional limits" and instead interpreted

§ 1231(a)(6) "to authorize detention only for a period consistent with the purpose of effectuating removal." *Clark v. Martinez*, 543 U.S. 371, 384 (2005); *see also id.* at 387 (O'Connor, J., concurring) (noting "the 6-month presumption" "in *Zadvydas*, is just that—a presumption" (citation modified)).

Therefore, to obtain habeas relief, a petitioner has the initial burden (1) to show his post-removal-order detention has surpassed six months or to rebut the presumption of reasonableness if such detention is less than six months, and (2) to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701; *see also Soberanes*, 388 F.3d at 1311 ("If removal is not reasonably foreseeable, the court should hold continued detention unreasonable." (citation modified)). If the petitioner meets his initial burden, "the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

## IV. Analysis

Petitioner's order of removal became administratively final on June 11, 2026, when he had not departed the United States and the alternate order from the IJ took effect. *See* Doc. 7-3 at 1 (showing the IJ-imposed deadline for voluntary departure and the terms of the alternate order); *see also Lopez Macias v. Mullin*, No. CIV-26-484-J, 2026 WL 2455801, at *2 (W.D. Okla. Aug. 13, 2026) (R&R) (recommending dismissal of petition as moot when IJ granted voluntary departure, order became administratively final, and petitioner was then subject to mandatory detention under § 1231(a)), *adopted*, 2026 WL 2473668 (W.D. Okla. Aug. 21, 2026); *Lopez v. Mullin*, No. 26-cv-663, 2026 WL 1602614, at *2 (D.N.M. June 4, 2026) (addressing finality of an alternate order in analogous

circumstances when petitioner did not timely depart). The alternate order of removal was final immediately because Petitioner "waived appeal of all issues." *Id.*; *see also* 8 C.F.R. § 1003.39 (explaining "the decision of the [IJ] becomes final upon waiver of appeal or upon expiration of the time to appeal if no appeal is taken whichever occurs first."); *Muradyan v. Warden*, No. 26-CV-63, 2026 WL 184206, at *2 (S.D. Cal. Jan. 23, 2026) ("Petitioner was ordered removed . . . and because he waived his right to appeal, his order of removal became administratively final the same day." (citation omitted)).

The 90-day removal period lasted until September 9, 2026. *See* 8 U.S.C. § 1231(a)(1). Nothing in the record indicates the removal period was extended. *See id.* § 1231(a)(1)(C) (allowing for extension of the removal period beyond 90 days "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal"). ICE did not remove Petitioner during the removal period. *See* ICE Online Detainee Locator System, *at* https://locator.ice.gov/odls/#/results (last visited Oct. 8, 2026) (indicating Petitioner remains detained at Diamondback Correctional Facility).

A court can order release of an immigration detainee once a noncitizen's 90-day removal period has ended if the noncitizen has not been removed. *Zadvydas*, 533 U.S. at 682, 687-88. The principles of *Zadvydas* govern Petitioner's continued detention:[3]

---

[3] Respondents argue Petitioner is subject to mandatory detention under § 1231(a)(2)(A). Resp. at 3. While Respondents' position was correct when they filed their response on August 28, 2026, the 90-day removal period ended. The undersigned analyzes Petitioner's current circumstances. *See Lee v. Crawford*, No. 25CV535, 2026 WL 745263, at *4 (E.D. Va. Feb. 27, 2026) (R&R) ("Federal courts routinely consider post-filing developments in

> There is no express limitation on the length of an alien's post-removal-period detention under § 1231(a)(6). But in *Zadvydas*, the Supreme Court interpreted § 1231(a)(6) narrowly and imposed an implicit reasonable time limitation on such detention to avoid any Fifth Amendment due process issues that could arise from indefinite detention. After *Zadvydas*, an alien can be detained only until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Babakhani v. Gantt*, No. CIV-26-705-SLP, 2026 WL 1822995, at *3 (W.D. Okla. June 24, 2026) (citation modified).

Petitioner's detention has not extended beyond the presumptively reasonable six-month period set out in *Zadvydas*. He has also provided no factual assertions beyond the passage of time to rebut the *Zadvydas* presumption of reasonableness that applies during the six-month period. In these circumstances, where less than four months of the six-month *Zadvydas* period have elapsed and no other circumstances are identified to show removal is not reasonably foreseeable, passage of time is not, by itself, enough.[4] *Cf. Babakhani*,

---

habeas proceedings challenging immigration detention."), *adopted*, 2026 WL 738591 (E.D. Va. Mar. 16, 2026). Even if the Court analyzes Petitioner's circumstances when filing the Petition (on August 13, 2026), he is not entitled to release because he was then subject to § 1231(a)(2)(A)'s mandatory detention.

[4] It is unclear why withdrawal of Petitioner's asylum application was not completed quickly. Though the undersigned does not recommend relief based on these circumstances, Petitioner may later be entitled to habeas relief if he has not been removed and can establish his removal is not likely in the reasonably foreseeable future. *See Zadvydas*, 533 U.S. at 701 ("As the period of prior postremoval confinement grows, what counts as the reasonably foreseeable future conversely . . . ha[s] to shrink." (citation modified)). The undersigned's analysis also might be different if Petitioner had not sought to withdraw his asylum application and an additional barrier to removal existed. *See Martinez v. Hyde*, 810 F. Supp. 3d 135, 139 n.10 (D. Mass. 2025) (finding the *J.O.P.* settlement agreement's requirements to be "striking evidence that Petitioner's removal is apparently neither imminent nor inevitable," and reading them to seemingly prevent the Government from "mov[ing] forward with . . . removal proceedings . . . unless and until it adjudicate[d the]

2026 WL 1822995, at *3 & nn.6-8 (identifying, in a case where detention had lasted approximately 23 months, the factors used in *Zadvydas* analyses).

As a result, Petitioner has failed to meet the *Zadvydas* requirement to establish "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 701. He has not provided evidence of any institutional barriers to his removal such as an unavailability of travel documents for removal to El Salvador or refusal by El Salvador to accept him. *See, e.g.*, *Abiodun v. Mukasey*, 264 F. App'x 726, 729 (10th Cir. 2008) (finding a petitioner was not entitled to relief because there had been "no showing" he would "not be accepted by his homeland of Nigeria").

Instead, the only indicated reason for delay of Petitioner's removal is the time required to complete withdrawal of his asylum application under the settlement agreement in *J.O.P. v. DHS*, No. Civ-19-1944, Doc. No. 199-2 (D. Md. July 30, 2024). Respondents state they are "working with Petitioner . . . to have [his] application [for asylum] withdrawn and his voluntary departure effectuated." Doc. 7-5 at 1. Petitioner provides no indication otherwise, and this is not a case where it appears from the record there is a "lack of meaningful, ongoing efforts by [ICE] to remove Petitioner." *Khaliq v. Noem*, 828 F. Supp. 3d 1260, 1269 (W.D. Okla. 2026).[5] This case presents a close call whether Petitioner has

---

still-pending asylum application on the merits," when the noncitizen was seeking asylum rather than withdrawing his asylum application).

[5] In his emergency motion for release, Petitioner acknowledges his "case is subject to a *J.O.P.*-related hold." Doc. 8 at 2 (citation modified). He requests release or a bond hearing but does not contest his class membership or Respondents' efforts to resolve his hold. *Id.* at 1-2.

rebutted the *Zadvydas* presumption because (a) Respondents provide limited information about progress toward Petitioner's removal pending final withdrawal of his asylum application, (b) they did not indicate his removal is imminent, and (c) they did not estimate how much additional time will be needed to withdraw his asylum application. Still, all circumstances considered, the undersigned does not find the delay caused by the *J.O.P.* settlement agreement to be a "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

## V. Recommendation and Notice of Right to Object

For these reasons, the undersigned recommends that the Court **DENY** the Petition, Doc. 1, for habeas relief. Adoption of the recommendation would moot Petitioner's pending Emergency Request for Release from Immigration Detention, Doc. 8.

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed not later than **October 22, 2026**. *See id.* § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party wishes to respond to the other party's objections, such response must be filed not later than **October 29, 2026**. *See* Fed. R. Civ. P. 72(b)(2). Failure to object timely waives the right to appellate review of the factual and legal issues addressed in this Report and Recommendation. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

**ENTERED** this 8th day of October, 2026.

Chris M. Stephens
__________________________________
CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE